**SO ORDERED.**

**SIGNED this 10 day of April, 2012.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION**

IN RE:

JOSEPH O. COPPERSMITH, JR.,                    CHAPTER 13
JUDITH E. COPPERSMITH,                         CASE NO.  11-04263-8-RDD

    DEBTORS

**AMENDED ORDER GRANTING MOTION FOR SECTION 362(k) SANCTIONS**

Pending before the Court is the Motion for Section 362(k) Sanctions (the "Motion") filed by Joseph and Judith Coppersmith on January 19, 2012 and the Response to Motion for Sanctions (the "Response") filed by M.G. Brown, a division of Foreman's Inc. on March 13, 2012.  The Court conducted a hearing on March 20, 2012 in Greenville, North Carolina to consider the Motion and the Response.

**BACKGROUND**

Joseph and Judith Coppersmith (the "Debtors") filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code on June 1, 2011.  The Debtors are individuals who reside in Camden, North Carolina.  The Debtors own and operate IPS Construction, Inc., which provides general construction contracting services.

Prior to filing the bankruptcy petition, IPS Construction, Inc. entered into a contract with M.G. Brown, a division of Foreman's Inc. ("M.G. Brown"). M.G. Brown supplies and sells building materials for construction projects. M.G. Brown is currently in the process of winding its business up but still has a number of open accounts. Mr. Coppersmith personally guaranteed payment on the contract with M.G. Brown. IPS Construction, Inc. failed to pay its debt to M.G. Brown and M.G. Brown filed a complaint in the General Court of Justice District Court Division, Small Claims Court in Camden County, North Carolina, file number 10-CVM-090, where the matter was heard before a magistrate judge. M.G. Brown asserted IPS Construction, Inc. owed $4,951.16 on the contract. Mr. Coppersmith attended the trial and asked for an accounting of the amount owed, which M.G. Brown did not provide. On January 12, 2011, the magistrate judge entered judgment in favor of M.G. Brown in the amount of $4,951.16. Mr. Coppersmith appealed the magistrate judge's decision and the matter was referred to arbitration by the district court judge. Neither of the Debtors attended the arbitration hearing, which occurred prior to June 1, 2011. The arbitrator entered judgment in favor of M.G. Brown in the amount of $4,951.16 plus a $50.00 arbitration fee.

The Debtors listed M.G. Brown as a creditor in their petition. Notice of the bankruptcy filing and the date of the Section 341 meeting of creditors was sent to M.G. Brown by the Bankruptcy Court on June 4, 2011.[1] On June 30, 2011, M.G. Brown, through Clay B. Foreman, Sr., president of Foreman's Inc., mailed a statement of account and a copy of the assessment of arbitration fee to IPS Construction, Inc. The statement of account required payment in the amount of $4,950.10 plus an additional $50.00 assessment for the arbitration fee. Additionally, Mr. Foreman handwrote a note

---

[1]M.G. Brown denies receiving any notice from the Bankruptcy Court regarding the Debtors' bankruptcy petition.

on the statement of account to the Debtors suggesting they were attempting to delay payment.[2]  Upon receipt of the statement of account and note, the Debtors contacted their attorney, J. Allen Murphy. Mr. Murphy sent the managing agent at M.G. Brown a letter on July 21, 2011 explaining the Debtors filed a Chapter 13 petition on June 1, 2011 and were protected from collection of pre-petition debts by 11 U.S.C. § 362 of the Bankruptcy Code.  M.G. Brown claims it did not receive the letter from the Debtors' attorney.  Approximately two months later, on August 31, 2011, M.G. Brown mailed IPS Construction, Inc. a second statement of account for $5,053.37 with another handwritten note to the Debtors.[3]  On September 30, 2011, M.G. Brown mailed IPS Construction, Inc. a third statement of account in the amount of $5,105.35 that also contained a handwritten note.[4]  All three account statements were mailed to IPS Construction, Inc. at the company's registered address, which is also the Debtors' address.[5]

After receiving the account statements, Mr. Coppersmith testified his anxiety levels increased and he could not sleep.  Mr. Coppersmith stated he believed the bankruptcy petition protected his

---

[2]In addition to the invoice in the amount of $4,950.10, Mr. Foreman handwrote a note to the Debtors: "Added the $50.00 Arbitration fee to your total as stated by judge @ court hearing you have paid attorneys to delay paying your M.G. Brown bill! Your choice as I'm certain attorneys appreciate it!"

[3]Written on the August 31, 2011 statement of account was "'Promised to make monthly payments!' but Spent MONEY ON ATTORNEY Spent MONEY ON COURT SYSTEM Result = Expect you will pay attorney - up front - to help you file bankruptcy! Clay Foreman"

[4]Written on the September 30, 2011 statement of account was: "You have paid attorneys – UP FRONT – instead of paying portion monthly! Your statement at Small Claim Court of son, . . . accepting your offer of paying a little MORE [plus] when you could rings hollow as I suspected! Judgment recorded PRIOR to your filing bankruptcy."

[5]The account statements were mailed to IPS Construction, 103 White Cedar Lane, Camden, North Carolina, 27921.

family from receiving collection attempts such as the account statements and he feared what might happen. Mrs. Coppersmith testified her already high anxiety increased and that she was in constant fear M.G. Brown, through Mr. Foreman, would spread rumors about the Debtors' financial condition in their community.

At the hearing, Mr. Foreman testified neither M.G. Brown nor Foreman's Inc. had an established procedure for handling accounts in bankruptcy. Mr. Foreman stated collections were generally handled within each local store where the account originated. If the store was unable to collect on an account, it was forwarded to Mr. Foreman who either filed a complaint in small claims court or referred the account to an attorney. Mr. Foreman stated he was unaware of the Debtors' bankruptcy petition at the time he sent out the account statements and that his notes referencing payment of attorneys were based on his own inferences of the next logical step for customers who failed to pay their bills. M.G. Brown did not file a claim in the Debtors' bankruptcy case.

The Debtors allege M.G. Brown willfully violated the automatic stay provided by § 362 by continuing to harass the Debtors and attempting to collect on a pre-petition debt. The Debtors allege they suffered emotional distress and loss of sleep caused by the account statements and the fear Mr. Foreman may be speaking negatively of them in the community.

M.G. Brown asserts any violation of the automatic stay was unintentional and that the account statements were addressed solely to IPS Construction, Inc. Because the accounts with M.G. Brown were in the name of IPS Construction, Inc., not the Debtors and there is no stay order in regard to IPS Construction, Inc., M.G. Brown asserts mailing the invoices did not violate the automatic stay as to the Debtors. Finally, M.G. Brown argues the Debtors have not alleged any

4

actual damages other than emotional distress, which they have failed to allege is sufficiently severe to be recoverable under North Carolina law.

## DISCUSSION

Section 362(a) of the Bankruptcy Code imposes a stay on "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of a case under" title 11. 11 U.S.C. § 362 (a)(6). The Bankruptcy Code also provides that any "individual injured by any willful violation of a stay provided by this section shall recover actual damages . . . and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362 (k)(1).

This Court has held "willfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay." *Lofton v. Carolina Fin. LLC (In re Lofton)*, 385 B.R. 133, 140 (Bankr. E.D.N.C. 2008) (citing *Citizens Bank v. Strumpf*, 37 F.3d 155 (4th Cir.1994), *rev'd on other grounds* 516 U.S. 16, 11 (1995)). Furthermore, "[i]f the creditor intentionally acts and its actions violate the automatic stay, the creditor's acts are willful." *In re Jones*, No. 06-00380-8-RDD, at 3 (Bankr. E.D.N.C. June 27, 2007).

Based on the evidence, the Court finds the Debtors proved M.G. Brown willfully violated § 362 by the preponderance of the evidence. M.G. Brown mailed three separate invoices to the Debtors in attempts to collect on a pre-petition debt incurred by IPS Construction, Inc. Mr. Coppersmith personally guaranteed the debt of IPS Construction, Inc. and was protected by the automatic stay when all of the account statements were sent. Though M.G. Brown may not have intended to violate the automatic stay, it fully intended to send the account statements to collect on IPS Construction, Inc.'s debt. Mr. Foreman's notes referenced the Debtors' promised payments to M.G. Brown at the small claims court hearing, evidencing his intent that the Debtors continue to

make payments to M.G. Brown on account of the pre-petition debt. Furthermore, despite Mr. Foreman's claims that he was unaware the Debtors filed a bankruptcy petition, each of the handwritten notes from Mr. Foreman referenced hiring an attorney or filing for bankruptcy. The Court does not find Mr. Foreman's statement that he had no knowledge of the Debtors' bankruptcy petition credible. Additionally, Mr. Foreman testified he learned of the Debtors' bankruptcy petition in August or September 2011. However, the last statement of account was sent to the Debtors on September 30, 2011, after the time Mr. Foreman stated he learned of the bankruptcy filing.

The Court does not find Mr. Foreman's explanation that the handwritten notes on the invoices referred only to his belief that filing bankruptcy is the next logical progression of a customer in the Debtors' financial situation convincing. The handwritten notes on the account statements suggest Mr. Foreman did not infer the Debtors were considering bankruptcy protection, but more likely than not indicate he had knowledge the Debtors actually filed a bankruptcy petition. The notes reference hiring an attorney, payment of legal fees, and filing for bankruptcy. Therefore, the Court finds Mr. Foreman had knowledge of the Debtors' bankruptcy petition at the time the account statements were mailed and had the requisite intent to collect on a pre-petition debt in violation of 11 U.S.C. § 362(a).

Foreman's Inc. and the four divisions under it, including M.G. Brown, conduct significant business that routinely encounters debtors seeking relief under the Bankruptcy Code. However, Mr. Foreman stated his company had no formal process for handling accounts that were in bankruptcy.[6]

---

[6]Mr. Foreman stated the general collections policy was to have each store attempt to collect on an account. If unsuccessful, the account was forwarded to Mr. Foreman. If the amount of the account was greater than the threshold for small claims court, an attorney was contacted. If the account was less than the threshold, Mr. Foreman handled the matter himself. Mr. Foreman stated there is no specific policy in place for customers who filed bankruptcy.

Mr. Foreman stated he was unaware the automatic stay provided by the Bankruptcy Code prevented attempts to collect on pre-petition debts. Yet, Mr. Foreman explained he previously dealt with other customers who filed for bankruptcy protection and had attorneys file proofs of claim in other bankruptcy cases. Mr. Foreman also testified he learned the automatic stay prevented him from collecting on pre-petition debts only when his neighbor, attorney Tony Hornthal, explained a bankruptcy filing prevented creditors from billing debtors. The conversation occurred on Mr. Foreman's front porch in the summer of 2011, well before the Debtors received the last statement of account in September 2011.[7]

In light of the scale and nature of Foreman's Inc.'s business, the Court finds Mr. Foreman's assertions he was unaware the Bankruptcy Code stayed certain actions of creditors in bankruptcy incredible. Furthermore, the Court finds M.G. Brown's lack of policy for handling accounts in bankruptcy an unreasonable business practice for a corporation of its size.

Upon finding willful violations of the automatic stay, the Court may award actual damages, which include monetary damages "to compensate for actual emotional distress caused by a creditor's violation of the automatic stay." *In re Thorpe*, Case No. 11-00862-8-SWH, 2011 WL 5909403 at *2 (Bankr. E.D.N.C. May 17, 2011) (citing *In re Kirkbride*, Case No. 08-00120-8-JRL, 2010 WL 4809334 (Bankr. E.D.N.C. Nov. 19, 2010) (allowing $10,000.00 damages for humiliation and embarrassment caused by a creditor's actions)). The Court may also award punitive damages for a willful violation of the automatic stay for the purpose of causing "'a change in the creditor's

---

[7]This statement contradicts another statement made by Mr. Foreman explaining he was not aware the automatic stay stayed collection attempts on pre-petition debts until another attorney whose client had declared bankruptcy personally called him and told him to stop sending account statements.

behavior . . . .'" *In re Sands*, Case No. 10-12205C-13G, 2011 WL 3962491 at *3 (Bankr. M.D.N.C. April 1, 2011) (quoting *In re Shade*, 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001)).

M.G. Brown argues the Debtors failed to sufficiently prove actual damages because North Carolina law requires a showing of severe emotional distress, which includes "any emotional or mental disorder . . . generally recognized and diagnosed by professionals." *Pierce v. Atlantic Group, Inc.*, No. COA11-494, 2012 WL 540096 at *9 (N.C. Ct. App. Feb. 21, 2012) (holding the elements of "both negligent and intentional infliction of emotional distress require the emotional distress be severe"). The Court finds § 362(k) allows for recovery of actual damages, including emotional distress. *See In re Thorpe*, Case No. 2011 WL 5909403 at *2; *In re Kirkbride*, 2010 WL 4809334 at *5; *Dawson v. Wash. Mut. Bank (In re Dawson)*, 390 F.3d 1139, 1148 (9th Cir. 2004). Evidence of emotional distress need not rise to the level necessary to prove intentional infliction of emotional distress or negligent infliction of emotional distress under North Carolina law. The Debtors testified they both experienced loss of sleep and increased anxiety after receiving the account statements from M.G. Brown when they were assured the bankruptcy petition stayed such actions by creditors.

Therefore, the Court finds the Debtors proved by a preponderance of the evidence M.G. Brown willfully violated the automatic stay provided by § 362. The Motion for Section 362(k) Sanctions is **GRANTED**. The Debtors are entitled to actual damages in the amount of $2,500.00.

The Court also finds punitive damages are appropriate in this case. M.G. Brown willfully and maliciously sent handwritten, personal notes to the Debtors on three separate occasions, while having no policy for managing bankrupt accounts. As such, the Debtors are entitled to punitive damages in the amount of $10,000.00.

The Debtors' attorney, J. Allen Murphy, is entitled to attorneys' fees in the amount of $2,500.00.  The total of $15,000.00 shall be paid to J. Allen Murphy, P.O. Drawer 888, New Bern, North Carolina, 28563 before April 16, 2012 at 5:00 pm.

**SO ORDERED.**

**END OF DOCUMENT**